XINYUE HIPPE,

    Plaintiff,

            Case No. 26-cv-371-pp

 v.

DOGIDS, LLC,

    Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 10), GRANTING INJUNCTIVE RELIEF, ADMINISTRATIVELY CLOSING CASE AND REQURING PLAINTIFF TO FILE A MOTION FOR ATTORNEY'S FEES WITH SUPPORTING DOCUMENTS**

On March 8, 2026, the plaintiff filed a class action complaint alleging that the defendant had violated Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181 *et seq.*, because the defendant's website is not formatted to allow a legally blind customer like the plaintiff to access its content. Dkt. No. 1. The affidavit of service reflects that the summons and complaint were served on March 17, 2026 by personal service. Dkt. No. 3. The defendant has not appeared or answered the complaint. On May 11, 2025, the plaintiff asked the clerk to enter default, dkt. no. 9, and the clerk did so the following day. The plaintiff then filed the instant motion for default judgment, seeking declaratory and injunctive relief, damages and attorneys' fees. Dkt. No. 12.

**I. Entry of Default**

Federal Rule of Civil Procedure 55 requires a two-step process before the entry of default judgment. A party first must seek an entry of default based on

1

the opposing party's failure to plead. Fed. R. Civ. P. 55(a). This means that the court must assure itself that the defendant was aware of the suit and still did not respond.

Under Fed. R. Civ. P. 4, a plaintiff may serve a corporate defendant "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). The process server's affidavit of service states that on March 17, 2026, she personally delivered copies of the summons and complaint on National Registered Agents, Inc. c/o April Ransburg, Intake Specialist, at 1209 N. Orange Street, Wilmington, Delaware 19801-1120. Dkt. No. 3. The defendant is a Delaware corporation, dkt. no. 1 at ¶20, and according to Delaware's Division of Corporations, National Registered Agents, Inc. is the defendant's registered agent. See https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx (search term: "DogIDs, LLC"). The court finds that the plaintiff properly effected service on the defendant by serving its registered agent.

## II.     Plaintiff's Motion for Default Judgment

After the entry of default, the plaintiff may move for default judgment under Rule 55(b). When the court determines that a defendant is in default, the court accepts as true the well-pleaded allegations in the complaint. e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007). "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action in the complaint." Id.

### A.     Factual Allegations

The court has subject matter jurisdiction under 28 U.S.C. §1331 and 42 U.S.C. §12182 because the plaintiff's claims arise under Title III of the ADA.

2

Dkt. No. 1 at ¶12. The plaintiff asserts that default judgment is proper because the defendant's website, www.dogIDs.com, presents accessibility barriers that interfere with screen-reader navigation, keyboard accessibility, product customization and the ability to independently complete a transaction in the same manner as sighted users. Dkt. No. 10 at ¶¶2, 3. The plaintiff is legally blind and cannot use a computer without the assistance of screen reader technology. Id. at ¶4; Dkt. 1 at ¶19. Screen reader software "vocalizes visual information on a computer screen" and uses auditory cues to allow a visually impaired user to effectively use websites. Dkt. No. 1 at ¶23; see also Andrews v. Blick Art Materials, LLC, 286 F. Supp. 3d 365, 374 (E.D.N.Y. 2017) (describing the functions of screen reader software). For the screen reader software to function, the website's content must be capable of being rendered into text; otherwise, the blind user is not able to access the content of the website. Id. at ¶24.

The plaintiff alleges that DogIDs.com "contains access barriers" to the plaintiff and other visually impaired individuals using screen reader software. Id. at ¶32. The plaintiff lists several examples of these barriers. First, the plaintiff states that there are many important pictures on the defendant's website that lack a text equivalent, or "alt-text," that would allow the screen reader to accurately describe the image to the user. Id. at ¶33. The plaintiff asserts that DogIDs.com also "lacks prompting information" that would allow a blind user to locate and accurately complete forms to make purchases or inquiries about the defendant's merchandise. Id. at ¶34. The plaintiff cites other issues such as poorly descriptive alternative text, missing landmarks, "skip to content" links that were not implemented and no prior warning that the links had opened new windows. Id. at ¶35. The plaintiff also alleges that

the website requires the use of a mouse to complete a transaction but says that many blind users cannot use a mouse because moving a mouse-controlled cursor on the screen requires vision. Id. at ¶37. Because of the accessibility issues, the plaintiff asserts that she and other visually impaired individuals must spend their time, energy and money to make purchases at traditional brick-and-mortar retailers, which often requires a driver and/or assistance in navigating the stores. Id. at ¶38.

The plaintiff says that she visited the defendant's website on January 26, 2026 to make a purchase. Id. at ¶40. She asserts that she became interested in the "Personalized Buckle Step-In Dog Harness" and attempted to purchase it. Id. The plaintiff avers that she encountered multiple accessibility issues, such as a "Skip to Content" link, multiple images with identical alternative text and buttons for options that lacked clear and descriptive language. Id. The plaintiff states that she remains interested in purchasing dog harnesses and other accessories on the defendant's website and would like to browse the available products and complete her purchases independently through the website with the selected items shipped directly to her home. Id. at ¶41. She asserts that without the court's intervention, her injury will continue and that the barriers have deprived her of full and equal access to, and enjoyment of, the goods, benefits and services of the website. Id. at ¶43.

The plaintiff alleges a violation of Title III of the ADA and seeks an injunction to prevent further violations. Id. at ¶¶57–71. She also seeks a declaration that the defendant violated Title III. Id. at ¶¶72-74. The plaintiff asks for declaratory and injunctive relief, pre- and post-judgment interest and attorneys' fees and costs. Id. at 19–20.

Although the complaint contains class action allegations, id. at ¶¶51–56, in the motion for default judgment, the plaintiff appears to have abandoned her class claims. The plaintiff has not moved for class certification under Federal Rule of Civil Procedure 23(c)(1). The court will construe the motion for default judgment as seeking default judgment only on an individual basis. See Hippe v. Favorite Daughter Holdings LLC, Case No. 25-cv-475, Dkt. No. 11 at 1 (E.D. Wis. July 9, 2025) (granting in part plaintiff's motion for default judgment on an individual basis where she failed to seek class certification prior to moving for default judgment).

    B.    <u>Liability</u>

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182(a). Put more succinctly, Title III "prohibits public accommodations from discriminating on the basis of disability." <u>Access Living of Metro. Chi. v. Uber Technologies, Inc</u>., 958 F.3d 604, 609 (7th Cir. 2020).

To state a claim under Title III, the plaintiff must show that (1) she is disabled within the meaning of the ADA, (2) the defendant owns, leases or operates a place of public accommodation and (3) the defendant discriminated against the plaintiff because of her disability. <u>Mohammed v. DuPage Legal Assistance Found.</u>, 781 F. App'x 551, 552 (7th Cir. 2019).

The plaintiff first must establish that she is disabled. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an

5

impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(1). The ADA regulations identify "seeing" and "reading" as "major life activities." 29 C.F.R. §1630.2(i)(1)(i). The plaintiff alleges that she is legally visually impaired and cannot use a computer without the assistance of screen reader software. Dkt. No. 1 at ¶19. Taking these well-pled allegations as true, as the court must on a motion for default judgment, the plaintiff has sufficiently stated that her visual impairment substantially limits the major life activities of seeing and reading, and that she is disabled within the meaning of the ADA.

The plaintiff next must establish that the defendant owns and operates a place of public accommodation. In a similar case filed by the plaintiff, the court explained why a website qualifies as a place of public accommodation:

> The Seventh Circuit has held that a "public accommodation" should not be interpreted "literally, as denoting a physical site." Morgan v. Joint Admin. Bd., Ret. Plan of Pillsbury Co. & Am. Fed'n of Grain Millers, AFL-CIO-CLC, 268 F.3d 456, 459, 2001 WL 1205383 (7th Cir. 2001). District courts within the Seventh Circuit have interpreted that language to hold that websites are places of public accommodation under Title III. Wright v. Thread Experiment, LLC, No. 19-cv-01423, 2021 WL 243604, at *3 (S.D. Ind. Jan. 22, 2021) ("[C]onsistent with the Seventh Circuit's directives that 'places of public accommodations' are not limited to physical spaces . . . Title III of the ADA governs websites that otherwise satisfy the statutory definition of 'places of public accommodation' under 42 U.S. Code § 12181(7)."); see also McCabe v. Heid Music Co., Inc., No. 23-CV-1215, 2024 WL 1174352, at *4 (E.D. Wis. Mar. 19, 2024); Walsh v. Dania Inc., No. 23 C 14380, 2024 WL 554286, at *4 (N.D. Ill. Feb. 12, 2024). The complaint alleges that the defendant "provides to the public the Website, which provides consumers access to an array of goods and services." Dkt. No. 1 at ¶21. Sales or rental establishments are "public accommodations" listed in 42 U.S. Code §12181(7)(E).

Hippe v. Circuit City Corp. Inc., Case No. 25-cv-298-pp, 2025 WL 2400670, *3 (E.D. Wis. Aug. 19, 2025). Because the defendant's website provides a digital

6

sales establishment for purchasing dog harnesses and other accessories, it falls within that category. See Wright, 2021 WL 243604, at *3 (holding that a retail sales website is a public accommodation). The court finds that DogIDs.com is a place of public accommodation.

Finally, the plaintiff must establish that the defendant discriminated against her due to her disability. Discrimination under Title III includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." Castelino v. Rose-Hulman Inst. of Tech., 999 F.3d 1031, 1037 (7th Cir. 2021) (quoting 42 U.S.C. §12182(b)(2(A)(ii)). The complaint alleges that the plaintiff attempted to access the defendant's website to purchase a dog harness but was unable to do so due to the website's incompatibility with her screen reader program. Dkt. No. 1 at ¶40. The plaintiff asserts that if the defendant "correct[ed] the numerous accessibility barriers" described in the complaint, she would return to the website to browse and complete her purchase. Id. Accepting these allegations as true, the defendant's failure to make its website accessible to the plaintiff via screen reader is a failure to make "reasonable modifications" necessary to afford the plaintiff equal access to its goods and services. 42 U.S.C. §12182(b)(2(A)(ii); McCabe, 2024 WL 1174352, at *5 (finding the plaintiff's allegations that she was unable to complete her purchase on a musical instrument website due to its incompatibility with screen reader software was sufficient to establish discrimination based on her disability). The court finds that the complaint states a claim that the defendant violated Title III of the ADA by failing to make its website accessible to the plaintiff.

C.    Relief

The complaint seeks injunctive and declaratory relief and attorneys' fees and costs. Dkt. No. 1 at 19–20. The plaintiff asserts that injunctive relief is warranted because "[t]he ADA authorizes private plaintiffs to obtain injunctive relief to prevent ongoing and future discrimination." Dkt. No. 10 at 5, ¶12. The plaintiff says that she has satisfied all requirements to obtain a permanent injunction. Id. First, she has succeeded on the merits because the defendant's default deems her allegations admitted: she is legally blind, cannot use screen-reader technology to fully and equally access the defendant's website, and was prevented from completing a transaction because of accessibility barriers. Id. at ¶13. Second, she will continue to suffer irreparable harm absent injunctive relief because she will continue to be denied meaningful full and equal access to the defendant's website. Id. at ¶14. Third, she has no adequate remedy at law because compensatory and punitive damages are unavailable to private plaintiffs under Title III of the ADA. Id. at ¶15 (citing 42 U.S.C. §12188(a)(1); Goodman v. Ill. Dep't of Financial & Prof'l Regulation, 430 F.3d 432, 438 (7th Cir. 2005)). Finally, the plaintiff asserts that the public interest favors injunctive relief because approximately 8.1 million Americans are visually impaired and approximately 100,000 live in Wisconsin. Id. at 6, ¶16.

The court agrees that the plaintiff has demonstrated irreparable injury by identifying the ways in which the defendant's website is inaccessible to screen reader users, and particularly the plaintiff. Dkt. No. 1 at ¶¶35, 40. Accepting the allegations in the complaint as true, these barriers make it impossible for the plaintiff to purchase products from the website. The plaintiff alleges that she intends to attempt to access the defendant's website in the future to complete her purchase. Id. at ¶40. The plaintiff has suffered, and will continue

to suffer, an irreparable injury so long as the defendant's website is inaccessible to her. <u>Wright</u>, 2021 WL 243604, at *4 (finding that the plaintiff's continued inability to access the defendant's website due to its incompatibility with screen readers was an irreparable injury). And there is no other remedy at law for the plaintiff's injury. Monetary damages are not available under Title III of the ADA, <u>Scherr</u>, 703 F.3d 1069, so the plaintiff's only option for relief is an injunction.

The balance of hardships weighs in favor of granting the injunction. Absent an injunction, the plaintiff will continue to be unable to purchase products from the defendant's website. If the court issues the injunction the plaintiff seeks, the defendant will be required to expend some costs to bring its website into compliance with the ADA. The costs of compliance are "something required of all businesses with public accommodations under the ADA." <u>McCabe</u>, 2024 WL 1174352, at *7. The plaintiff will suffer the greater hardship in the absence of an injunction.

The public interest will be served by an injunction. There is a strong public interest in eliminating discrimination against individuals with disabilities. <u>PGA Tour, Inc. v. Martin</u>, 532 U.S. 661, 675 (2001) ("Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.'" (citations omitted)). The injunction the plaintiff seeks will serve that public interest by making the defendant's website more accessible to visually impaired individuals. The court will issue a permanent injunction.

The court has found that the plaintiff is entitled to a permanent injunction and will enter an injunction to enjoin the defendant from

9

committing further violations of Title III of the ADA. The court will require the defendant "to take all the steps necessary to make the Website [Dogsid.com], into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by visually impaired individuals." Dkt. No. 1 at 19.

The plaintiff also seeks payment of costs and reasonable attorneys' fees, dkt. no. 1 at 20, which are recoverable under the ADA. Lange v. City of Oconto, 28 F.4th 825, 848–49 (7th Cir. 2022) (prevailing party may recover "a reasonable attorney's fee, including litigation expenses, and costs" (quoting 42 U.S.C. §12205)). When the plaintiff filed her motion for default judgment on May 22, 2026, she asked the court to reserve jurisdiction to determine her reasonable attorneys' fees and costs after she files an appropriate motion within sixty days after entry of default judgment. The court will administratively close the case while the plaintiff's counsel prepares an appropriate motion and supporting documentation. The court will give counsel thirty days to file those materials. The plaintiff's counsel must properly support his request for attorney's fees and the court strongly urges him to review the court's order in Circuit City, 2025 WL 2962532, denying his motion for attorney fees in that case.

### III.    Conclusion

The court **GRANTS** plaintiff's motion for default judgment. Dkt. No. 10.

The court **GRANTS** the plaintiff's request for injunctive relief for the defendant's violation of Title III of the ADA. Dkt. No. 10. The court will issue a separate injunction in compliance with Federal Rule of Civil Procedure 65(d).

The court **ORDERS** that this case is **ADMINISTRATIVELY CLOSED**. The plaintiff's counsel may file a motion for attorney fees and costs with supporting

10

documentation by the end of the day on **August 28, 2026**. If the plaintiff's counsel files a motion, the court will determine whether he has supported the request. At that point, the court will rule on the motion and convert the administrative closure to a final judgment.

Dated in Milwaukee, Wisconsin this 24th day of July, 2026.

BY THE COURT:

HON. PAMELA PEPPER
Chief United States District Judge

11